IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    CR 01-326-BR

         Plaintiff,                          OPINION AND ORDER

v.

DERRICK JERMAINE JAY and
DIONNE LEAQUONE BAKER,

         Defendants.


**KARIN J. IMMERGUT**
United States Attorney
**SCOTT KERIN**
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1000

         Attorneys for Plaintiff


1  - OPINION AND ORDER

**STEVEN T. WAX**
Federal Public Defender
**NANCY BERGESON**
Assistant Federal Public Defender
101 S.W. Main St., Suite 1700
Portland, OR  97204
(503) 326-2123

      Attorneys for Defendant Derrick Jermaine Jay

**MICHELE LYNNE KOHLER**
618 NW Glisan, Suite 203
Portland, OR 97209
(503) 219-9300

      Attorney for Defendant Deon Leaquone Baker

**BROWN, Judge.**

On April 11, 2005, Defendant Derrick Jermaine Jay appeared for sentencing after a jury convicted him of Count 3, Possession With Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and after he pleaded guilty pursuant to a Plea Agreement to Count 6, Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g), as charged in a Superseding Indictment dated August 19, 2004.

After hearing the parties' arguments about various disputed issues affecting determination of the advisory sentencing guidelines range pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005), the Court took these issues under advisement and deferred the imposition of sentence.  In particular, the Court considered the parties' opposing views as to whether the terms of their Plea Agreement dated December 13, 2004, which was entered

into before the Supreme Court's decision in *Booker*, limited the Court's authority to make factual findings as to Count 3 for purposes of determining the advisory sentencing guidelines range.

The Court now has completed its consideration of the applicable guidelines issues. For the reasons that follow, the Court concludes the parties' Plea Agreement does not limit the Court's sentencing authority as clarified in *Booker*. Accordingly, the Court has determined the advisory sentencing guidelines range in this matter, before consideration of any departure factors or the factors set forth in 18 U.S.C. § 3553(a)(1) and (2), is **78-97 months.**

The Court, however, also concludes it would be "fair and just" to allow Jay to withdraw his assent to the Plea Agreement and his guilty plea to Count 6 based on the Supreme Court's intervening *Booker* decision. If Jay chooses to withdraw his guilty plea, the Court will exercise its discretion to allow him to do so, which, in turn, will leave Counts 2, 4, and 6 pending for trial or other resolution. The Court, therefore, gives Jay leave to file a motion to withdraw both his assent to the Plea Agreement and his guilty plea to Count 6 no later than May 2, 2005. If Jay files such a motion, the Court will grant it and conduct a hearing at 1:30 p.m., May 13, 2005, for the purposes of setting trial dates for Counts 2, 4, and 6. If Jay does not file such a motion by May 2, 2005, the Court will complete these

sentencing proceedings at 1:30 p.m., May 13, 2005.

## PROCEDURAL BACKGROUND

On August 19, 2004, the government brought a six-count
Superseding Indictment against Defendants Derrick Jermaine Jay
and Deon Leaquone Baker as follows:  In Count 1, the government
charged Baker as a Felon in Possession of two firearms on
June 22, 2001, in violation of 18 U.S.C. § 922(g)(1); in
Count 2, the government charged Jay as a Felon in Possession of
the same two firearms on June 22, 2001, in violation of 18 U.S.C.
§ 922(g)(1); in Count 3, the government charged both Jay and
Baker with Possession of Cocaine with Intent to Distribute on
June 22, 2001, in violation of 21 U.S.C. §§ 841(a)(1) and
841(b)(1)(c) and 18 U.S.C. § 2; in Count 4, the government
charged Jay and Baker with knowingly carrying the same two
firearms charged in Counts 1 and 2 "during and in relation to"
the drug trafficking crime charged in Count 3 in violation of 18
U.S.C. § 924(c); in Count 5, the government charged Jay and Baker
with knowingly carrying the same two firearms charged in Counts 1
and 2 "in furtherance of" the drug trafficking crime charged in
Count 3 in violation of 18 U.S.C. § 924(c); and in Count 6, the
government charged Jay as a Felon in Possession of two different
firearms than those alleged in Counts 1, 2, 4, and 5, on June 22,
2001, in violation of 18 U.S.C. § 922(g)(1).

On September 1, 2004, the Court ordered Jay to be tried separately from Baker on Counts 2-6. In addition, on September 21, 2004, the Court granted Jay's Motion for a separate trial on Count 6. As a result, Jay went to trial before a jury on Counts 2-5 on September 28, 2004, and Count 6 was set for trial at a later time.

As noted, in Counts 2, 4, and 5, Defendants were charged with various crimes involving the same two firearms: a .380 caliber Titan pistol and a .357 Sturm Ruger revolver, which were found together with 439 grams of cocaine in the vehicle Jay was driving and in which Baker was riding at the time of their arrest on June 22, 2001. In Count 6, however, Jay was charged as a felon in possession of two different firearms: a .9-mm Sturm Ruger pistol and a .357 Colt revolver, which were seized from the residence of Jay's girlfriend, Khalida Thompson, pursuant to a search warrant based on evidence obtained after Jay's arrest. In order to distinguish among these firearms, the Court refers to the two firearms involved in Counts 2, 4, and 5 as "the drug guns" and the two firearms involved in Count 6 as "the Thompson residence guns."

During Jay's September 2004 jury trial on Counts 2, 3, 4, and 5, the government voluntarily dismissed Count 5 before the jury received the case. The jury, therefore, deliberated only on Counts 2, 3, and 4. Although the jury found Jay guilty on Count

3 (Possession with Intent to Distribute Cocaine) and specifically found the quantity of cocaine for which Jay was accountable was 439 grams, the jury was unable to reach a verdict on Counts 2 and 4, each of which centered on the factual question as to whether Jay also possessed "the drug guns" and, as to Count 4, whether he possessed those guns as a principal or aider and abettor "during and in relation to" the Count 3 drug charge.

At a status conference on October 15, 2004, the Court set December 13, 2004, for a jury trial on Count 6, which involved Jay's alleged unlawful possession of the "the Thompson residence guns." The Court also set January 11, 2005, as the date for retrial of Counts 2 and 4, which involved Jay's alleged crimes with "the drug guns." On December 13, 2004, however, the parties tendered to the Court their Plea Agreement under which Jay agreed to plead Guilty to Count 6 and the government agreed to dismiss Counts 2 and 4 against Jay[1] at the time of his sentencing on Counts 3 and 6. The Court accepted Jay's guilty plea to Count 6 pursuant to the terms of the Plea Agreement and ordered a Presentence Report (PSR).

After the Supreme Court issued its decision in *Booker*, the PSR was made available to both counsel on January 31, 2005, and an Addendum was provided on February 24, 2005. The PSR

---

[1] The Superseding Indictment is still pending against Baker. A jury trial is set to begin on June 28, 2005.

recommended an advisory sentencing guideline range of 78-97 months.

In response to the PSR, Jay argued he should not be held accountable for "the drug guns" in any way as to either count of conviction because he made no admissions with respect to these guns, and, at the time he pled guilty to Count 6, the Court did not have the authority to make factual findings about these guns. According to Jay, any application of *Booker* to his sentencing would violate the *ex post facto* protections set forth in Article I, Section 9, Clause 3 of the United States Constitution. In addition, Jay argues the application of *Booker* to his sentencing would violate his rights under the Due Process Clause of the Constitution because he did not have "fair warning" with respect to "the breadth of sentencing discretion that the *Booker* remedial opinion has now reposed in the federal district court," which Jay asserts is different from the maximum punishment that "was potentially applicable to him at the time of his offense conduct, his arraignment, his jury trial and his change of plea." Jay also argues he should receive a complete adjustment for acceptance of responsibility as to Count 3 notwithstanding his decision to go to trial on Counts 2, 3, and 4. As a consequence, Jay asserted in his April 8, 2005, sentencing letter that the "appropriate guideline range is 46-57 months."

The government agreed with Jay that "the drug guns" should

not be associated with "the Thompson residence guns" for purposes of the PSR's recommended four-level enhancement under United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(5). The government also agreed with Jay that Counts 3 and 6 should not be grouped pursuant to U.S.S.G. § 3D1.2(c) as recommended in the PSR. On the other hand, the government contended the Court has full authority in light of *Booker* to make its own factual determinations concerning "the drug guns" when calculating the advisory sentencing guidelines range and to do so based only on a preponderance of the evidence standard. In particular, the government argued the Court was free to make its own findings as to whether to enhance the base offense level for Count 3 by two levels pursuant to U.S.S.G. § 2D1.1(b)(1) because Jay possessed "the drug guns" in connection with Count 3. The government also argued Jay was not entitled to any reduction for acceptance of responsibility as to Count 3. According to the government, the resulting advisory sentencing guidelines range is 87-108 months.

## STANDARDS

"Prior to sentencing, a defendant can withdraw his guilty plea only by showing a fair and just reason for withdrawal." *United States v. Nostratis*, 321 F.3d 1206, 1207 (9th Cir. 2003) (citing Fed. R. Crim. P. 11(d)(2(B) and *United States v. Ruiz*, 257 F.3d 1030, 1031 (9th Cir. 2001)(*en banc*)). The decision to

allow a defendant to withdraw a plea is solely within the discretion of the district court. *Id.* (citing *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995)).

"[F]air and just reasons for withdrawal include inadequate Rule 11 colloquies, . . . intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Ortega-Ascanio*, 376 F.3d 879, 882 (9th Cir. 2004)(internal citations omitted). A Supreme Court decision intervening between the date of plea and sentencing can constitute a fair and just reason for the district court to allow a defendant to withdraw his plea. *Id.*


## DISCUSSION

1.  **Guidelines Calculations for Count 3.**

    A.  **The Base Offense Level is 24.**

    It is undisputed that, pursuant to U.S.S.G. § 2D1.1(c)(8), the base offense level for possession with intent to distribute 439 grams of cocaine is 24.

    B.  **Pursuant to U.S.S.G. § 2D1.1(b)(1), two levels should be added because of "the drug guns." Alternatively, Jay may withdraw his plea of guilty to Count 6.**

    Under U.S.S.G. § 2D1.1(b)(1), the district court should apply a two-level increase to the base offense level "[i]f a dangerous weapon (including a firearm) was possessed." In turn, Application Note 3 provides in part:

> The enhancement for weapon possession reflects the
> increased danger of violence when drug traffickers
> possess weapons. The adjustment should be applied
> if the weapon was present, unless it is clearly
> improbable that the weapon was connected with the
> offense.

Thus, this enhancement applies unless it is clearly improbable
"the drug guns" were connected to Jay's criminal conduct in
Count 3.

According to the Plea Agreement, it is Jay's "position"
that these guns "belonged to Deon Baker." In addition, Jay
emphasizes there is no jury finding that Jay possessed "the drug
guns." As noted, Jay contends this Court lacks the authority to
find Jay possessed "the drug guns" in connection with Count 3
because to do so would expose him to a higher sentence than he
faced at the time he entered his plea to Count 6 and would
constitute a violation of constitutional *ex post facto*
protections and his due process rights. In addition, at the
April 11, 2005, sentencing hearing, Jay argued it would be
fundamentally unfair and a violation of his due process rights if
the Court now made findings about "the drug guns" when it was not
empowered to do so at the time of the change-of-plea hearing.

The government correctly notes *Booker* applies to all
pending cases. *Booker*, 125 S. Ct. at 769. The government is
also correct that there would be no *ex post facto* violation if
the Court applied *Booker* to this pending case because "the *Ex
Post Facto* Clause does not apply to judicial decision making."

10 - OPINION AND ORDER

*See Rogers v. Tennessee*, 532 U. S. 451, 462 (2001).  The Court,
therefore, concludes it has both the authority and the duty under
*Booker* to make factual findings for the purpose of considering
the application of U.S.S.G. § 2D1.1(b)(1) to the base offense
level for Count 3.

This Court has presided at numerous proceedings in this
matter, including the contested hearing on Jay's Motion to
Suppress and the jury trial on Counts 2, 3, and 4.  Having
observed relevant witness testimony during proceedings at which
the factual issues surrounding "the drug guns" were intensely
litigated, this Court is able to make the requisite factual
findings beyond a reasonable doubt.  Based on all of that
evidence, this Court finds beyond a reasonable doubt that Jay
knowingly possessed "the drug guns" jointly with Defendant Baker
in connection with Count 3.  Thus, the Court need not determine
the standard of proof necessary to make such findings, which is
an issue that appears to remain an open question in the Ninth
Circuit.

Accordingly, a two-level enhancement to the Count 3
base offense level of 24 is warranted unless, as Jay asserts, due
process considerations preclude this guideline application.

As noted, when the Plea Agreement was entered into on
December 13, 2004, the Supreme Court had not yet issued its
decision in *Booker* that rendered advisory the formerly mandatory

United States Sentencing Guidelines.  Instead the parties and the

Court were bound at that time by the Ninth Circuit's then-

existing decision in *United States v. Ameline*, 376 F.3d 967 (9th

Cir. 2004).[2]  *Ameline* stood for the rule that a sentence based on

facts found by the district judge by a preponderance of the

evidence as authorized by the then-mandatory sentencing

guidelines violated the Sixth Amendment as construed by the

Supreme Court in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

In support of Jay's guilty plea to Count 6, the Plea

Agreement provided in Paragraph 4 a "Factual Summary for Count 6"

in which Jay admitted the facts necessary to establish all of the

elements of Count 6 as charged.  The Plea Agreement also included

a "limited *Blakely* waiver" in Paragraph 8 as follows:

> A.   In addition to waiving the right to a jury trial
>      on the issue guilt with regards to sentencing[,]
>      defendant knowingly and voluntarily agrees that:
>
> 1.   Defendant committed the instant offense
>      subsequent to sustaining one felony
>      conviction for a crime of violence;
> 2.   The 9mm Sturm Ruger pistol, model P89, serial
>      number 309-56712, recovered from outside of
>      Khalida Thompson's residence, was a stolen
>      firearm; and,
> 3.   Defendant further agrees that his admissions
>      and stipulations with respect to guilt and
>      sentencing constitute proof beyond a
>      reasonable doubt.

---

[2] After the January 12, 2005, *Booker* decision, the Ninth
Circuit first filed an amended opinion in *United States v.
Ameline*, 400 F.3d. 644 (2005), and then granted rehearing *en
banc,* 401 F.3d 1007 (2005).  At present, *Ameline* remains pending
in the Ninth Circuit.

B.  Defendant's position regarding the cocaine and the firearms discovered in his car, a .380 caliber Titan pistol, model 380, serial number B080698, and a .357 mag Sturm Ruger revolver, serial number 151-49811, is that those items belonged to Deon Baker.

As noted, the Plea Agreement memorializes Jay's "position" that the "the drug guns"[3] "belonged to Deon Baker." With respect to this part of the Plea Agreement, the Court made the following statement to Jay during the change of plea hearing:

THE COURT:  Paragraph B, there, says that you're reserving your position that ["the drug guns"] were items that belonged to Deon Baker . . . . So this simply reflects what your position is.  Understood?"

THE DEFENDANT: Yes, ma'am.

The Court, however, did not discuss with Jay during the colloquy about his plea to Count 6 any sentencing exposure Jay faced on Count 3, including the possibility of an enhanced exposure for Count 3 because of "the drug guns" for which he denied responsibility.  Although the Plea Agreement is silent as to the parties' intentions concerning judicial fact-finding about "the drug guns," the following excerpt from the plea colloquy makes clear Jay did not intend to authorize such judicial fact-finding:

---

[3] The Plea Agreement also provided it was Jay's "position" that the cocaine "belonged to Deon Baker."  A jury, however, already has convicted Jay of possession with intent to deliver that same 439 grams of cocaine.  His "position" on this issue, therefore, is irrelevant.

THE COURT: Okay. Now, is it Mr. Jay's intention, Ms. Bergeson, to limit his *Blakeley* waiver to just what is in the paragraph 8, then?

MS. BERGESON: Yes, it is a limited *Blakeley* –

THE COURT: All right. So the Court is not being empowered to make any other findings of fact?

MS. BERGESON: That's correct.

This was a relevant inquiry at the time because, as noted, the Ninth Circuit had then held in *Ameline* that the Court did not have such authority. The Court also notes it took care during the plea colloquy to inform Jay that the maximum sentence he was facing on Count 6 in light of the application of *Blakely* as interpreted in *Ameline* was the sentencing guideline range based on the elements of the offense and the facts he admitted:

THE COURT: . . . . So when I tell you the maximum sentence for felon in possession is ten years, I need to qualify that statement, because it appears that the maximum sentence that a federal judge can impose under the federal sentencing guidelines is really whatever the guidelines call for, once certain determinations are made about the seriousness of a – of an offense and a person's criminal history. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: So I'm telling you it's ten years, but I can also assure that the guidelines don't call for a ten-year sentence. And, in fact, the maximum sentence will be whatever your guidelines sentence turns out to be. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT:      The guideline sentence is based upon
                determining what the base offense level
                is, and then determining whether there
                are any factors that call for that base
                offense level to be increased or
                reduced.
                Before *Blakeley*, I had the authority to
                make those factual findings, simply by a
                standard called preponderance of the
                evidence, the probabilities . . . .
                After *Blakeley*, it seems clear that I
                don't have the power to do that anymore.
                That if I'm going to do anything other
                assess a – an offense level based on the
                elements that a person admits, or that a
                jury finds in order to convict an
                individual, I would need the defendant
                to admit the fact or to give up his
                right to have a jury decide that fact in
                a contested setting, with the government
                proving that fact beyond a reasonable
                doubt, after having charged that fact in
                an Indictment.
                Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT:      So one of the things your Plea Agreement
                calls for . . . is a waiver on your part
                of your right to have the government
                prove certain facts about these guns,
                the Khalida Thompson house guns, as part
                of setting a guideline sentence here.
                Do you understand?

THE DEFENDANT: Yes, ma'am.

In summary, (1) the Plea Agreement was reached at a
time when Jay understood the Court did not have authority to make
factual findings which would enhance his sentencing exposure;
(2) during the plea colloquy, Jay's counsel made clear Jay did

not intend to empower the Court to make any findings not included in the Plea Agreement; (3) Jay reserved in the Plea Agreement his "position" that "the drug guns" belonged to Deon Baker and, therefore, he did not agree there was a factual basis to associate those guns with him; and (4) the government promised to dismiss Counts 2 and 4, which are the only unadjudicated counts involving "the drug guns. In this context, the Court concludes it is possible Jay tendered his plea to Count 6 based on an implied expectation that the Court could not adjust his Count 3 base offense level because of "the drug guns." Indeed, during the April 11, 2005, sentencing hearing, Jay's counsel argued to this effect.

In response, the government points to Paragraph 13 of the Plea Agreement, which provides:

> **Total Agreement**: This letter states the full extent of the agreement between the parties. There are no other promises or agreements, express or implied.

The Court, however, also notes the following exchange from the plea colloquy as to this part of the Plea Agreement:

> THE COURT: All right. Okay. So, at the end [of the Plea Agreement], the government says this letter states the full extent of the agreement between the parties. There are no other promises, agreements, express or implied. *But I'm telling you what we've put on the record today is*

> *also part of your agreement because I*
> *think it clarifies what everybody's*
> *intention is.*
> Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT:    Agreed, Mr. Kerin [for the government]?

MR. KERIN:    Yes.

(Emphasis added.)

As noted, a defendant can withdraw his guilty plea prior to sentencing by showing there is "a fair and just reason" for withdrawal. *United States v. Nostratis*, 321 F.3d at 1207. *See also* Fed. R. Crim. P 11(d)(2(B). A Supreme Court decision intervening between the date of plea and sentencing can constitute a fair and just reason for the district court to allow a defendant to withdraw his plea. *United States v. Ortega-Ascanio*, 376 F. 3d 879, 882 (9th Cir. 2004)(internal citations omitted).

In the circumstances of this multiple-count case, the Court concludes the Supreme Court's *Booker* decision, which intervened between Jay's plea of guilty to Count 6 and sentencing, provides a "fair and just" reason to permit Jay to withdraw his guilty plea if he chooses to do so. To this point, however, Jay has not offered any indication that he would withdraw his plea if permitted to do so. Instead Jay insists due process considerations of fairness limit the Court's sentencing authority to that which existed on December 14, 2004. Jay,

17 - OPINION AND ORDER

however, offers no controlling authority to support this argument, and the Court finds his argument unpersuasive.

Thus, unless Jay moves to withdraw his plea by May 2, 2005, the Court intends to apply a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) to the base offense level for Count 3 on account of "the drug guns."

**2.  Guidelines Calculations for Count 6.**

**A.  The Base Offense Level is 20.**

It is undisputed that, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the base offense level for Jay's Count 6 conviction for being a felon in possession of a firearm is 20 because Jay committed this crime after sustaining one felony conviction for a crime of violence, specifically armed robbery in DeKalb County, Georgia, in 1991.

**B.  Pursuant to U.S.S.G. § 2K2.1(b)(4), two levels should be added because one of "the Thompson residence guns" was stolen.**

As noted, the Plea Agreement includes Jay's admission that the 9mm Sturm Ruger pistol, model P89, serial number 309-56712, recovered from outside of Khalida Thompson's residence, was a stolen firearm.  Accordingly, U.S.S.G. § 2K2.1(b)(4) provides for a two-level enhancement to the base offense level.

**C.  "The drug guns" should not be counted pursuant to U.S.S.G. § 2K2.1(b)(1)(A) when calculating the guideline range for Count 6.**

In Paragraph 35 of the PSR, the probation officer

recommends a one-level enhancement (based on the 2000 edition of the *United States Sentencing Guidelines Manual*) pursuant to U.S.S.G. § 2K2.1(b)(1)(A), which instructs the court to increase the base offense level by one level "[i]f the offense involved three or more firearms." The probation officer supported this recommendation by counting both "the Thompson residence guns" and "the drug guns" when determining the number of guns "involved" in the Count 6 offense.

Application Note 9 to U.S.S.G. § 2K2.1 provides:

> For purposes of calculating the number of firearms under subsection (b)(1), count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed . . . .

In this case, the Court finds the only guns "involved" in Count 6 are "the Thompson residence guns." Even when considering the broad definition of "relevant conduct" in the context of U.S.S.G. § 1B1.3, there is not any evidence that links "the Thompson residence guns" to "the drug guns." In fact, as best the Court can tell, Jay's possession of the guns found at the Thompson residence was wholly independent of his criminal conduct with Deon Baker on June 22, 2001.

The Court, therefore, concludes Paragraph 35 of the PSR is in error, and "the drug guns" should not be counted pursuant to U.S.S.G. § 2K2.1(b)(1)(A) when calculating the guideline range for Count 6.

**D. Because Jay did not possess "the Thompson residence guns" in connection with Count 3, four levels should not be added pursuant to U.S.S.G. § 2K2.1(b)(5).**

U.S.S.G. § 2K2.1(b)(5) provides:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; . . . increase by 4 levels.

In Paragraph 37 of the PSR, the probation officer recommends the application of this enhancement on the basis that Jay possessed "the Thompson residence guns" in connection with Count 3. As noted, however, the Court finds there is no factual basis to link Jay's possession of these guns to his criminal conduct with Baker and "the drug guns" on June 22, 2001. The Court, therefore, concludes Paragraph 37 of the PSR is in error, and this enhancement does not apply.

**3. Counts 3 and 6 should not be grouped together under U.S.S.G. § 3D1.1(a)(1) and § 3D1.2(c).**

When a defendant has been convicted of more than one count, U.S.S.G. § 3D1.1 requires the court to "group" the counts by applying the rules specified in U.S.S.G. § 3D1.2, to determine the offense level applicable to each group by applying the rules specified in U.S.S.G. § 3D1.3, and to determine the combined offense level applicable to all groups by applying the rules specified in § 3D1.4.

Pursuant to U.S.S.G. § 3D1.2, all counts "involving substantially the same harm" are treated as a single group. That test is met "[w]hen one of the counts embodies conduct that is

treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c).

In Paragraph 33 of the PSR, the probation officer recommends grouping Counts 3 and 6 because "each provide an offense level enhancement for conduct embodied by the other count." As noted, however, the Court has found PSR Paragraphs 35 and 37 erroneously applied specific offense characteristics of each count to the other. The Court, therefore, finds Counts 3 and 6 should not be grouped together pursuant to U.S.S.G. § 3D1.1(a)(1) and § 3D1.2(c). Instead the Court must treat Counts 3 and 6 as separate "groups" and determine the combined offense level for these "groups" pursuant to U.S.S.G. § 3D1.4.

**4.    The combined offense level for Counts 3 and 6 is 27.**

Pursuant to U.S.S.G. § 3D1.4, a combined offense level is determined by taking the offense level applicable to the group with the highest offense level and increasing that offense level according to a specified formula.

As noted, the base offense level for Count 3 is 24, to which two levels are added because Jay jointly possessed "the drug guns" in connection with Count 3. Thus, the adjusted offense level for Count 3 is 26. As for Count 6, the base offense level is 20, to which two levels are added because one of "the Thompson residence guns" was stolen. This enhancement, in turn, results

in an adjusted offense level of 22. Accordingly, at level 26, Count 3 has the highest offense level for purposes of U.S.S.G. § 3D1.4.

The formula in U.S.S.G. § 3D1.4 requires the Court to calculate "units" to add to level 26, the highest offense level. One unit is added for Count 3 itself pursuant to § 3D1.4(a) and one unit is added for Count 6 pursuant to § 3D1.4(a) because its offense level, 22, is 1-4 levels below level 26, the level for Count 3. Because the units total two, two levels are added to level 26, the highest offense level, for the combined offense level. U.S.S.G. § 3D1.4.

This results in a combined offense level of 28.

**5. Jay is entitled to a two-level reduction for acceptance of responsibility.**

In Paragraph 31 of the PSR, the probation officer recommends Jay receive only a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b) because Jay's acceptance only applies to Count 6. For the reasons that follow, the Court agrees.

Jay argues he should receive a three-level reduction for acceptance of responsibility because he "did not dispute the facts" pertinent to Count 3 and he entered a guilty plea to Count 6. The Court finds this argument unpersuasive. Jay's pretrial statements to the police were elusive at best and, in

any event, are insufficient to show he "clearly demonstrates acceptance of responsibility" for Count 3 as required by U.S.S.G. § 3E1.1(a).

On the other hand, although the government asserts Jay should receive a three-level reduction for acceptance of responsibility only with respect to Count 6, the government urges the Court to take such a reduction before calculating any multiple-count adjustments pursuant to U.S.S.G. § 3D1.1. The Court notes, however, the Sentencing Guidelines require any reduction for acceptance of responsibility to be made after all of the offense level adjustments are made. *See United States v. Ginn*, 87 F. 3d 367, 371 (9th Cir. 1996). In addition, in light of the disparity in the adjusted offense levels for Counts 3 and 6 as calculated by the Court, the government's approach would significantly reduce any downward adjustment because of Jay's guilty plea. The Court, therefore, finds the government's argument unconvincing.

Application Note 1 to U.S.S.G. § 3E1.1 provides in part:

> In determining whether a defendant qualifies [for a two-level reduction] under subsection (a), appropriate considerations include, but are not limited to, the following: (a) truthfully admitting the conduct comprising the *offenses* of conviction.

(Emphasis added.) Thus, the advisory sentencing guidelines instruct the Court to take into account whether the defendant has accepted responsibility as to *all* of the offenses of conviction.

Indeed, the Ninth Circuit recently confirmed this principle:

> In *United States v. Ginn*, . . . we addressed whether a
> defendant who pleads guilty to certain charges in an
> indictment, but who is convicted after trial on other
> charges in the same indictment, is eligible for an
> acceptance of responsibility reduction.  Looking to the
> plural use of the word "offense(s)" in the phrase
> "offense(s) of conviction" in application note 1(a) to
> § 3E1.1, we held that "a defendant is not entitled to
> an adjustment when he does not accept responsibility
> for all of the counts on which he is convicted."  *Ginn*,
> 87 F.3d at 370. Because the defendant in *Ginn* had
> maintained his innocence and proceeded to trial on some
> counts on which he had been indicted in a single
> indictment, we concluded that he could not avail
> himself of the § 3E1.1 acceptance of responsibility
> reduction.

*United States v. Kellum*, 372 F.3d 1141, 1145 (9ᵗʰ Cir. 2004),

*cert. denied, Kellum v. United States*,  125 S. Ct. 448 (2004.

Nonetheless, in *Kellum*, the Ninth Circuit held it was not

error for a district court to apply a two-level acceptance of

responsibility reduction for a defendant's guilty pleas to

charges in one indictment even though the defendant put the

government to the expense of trial as to similar charges brought

in a second indictment:

> As we have explained, the Sentencing Guidelines suggest
> that a reason for a downward adjustment to offense
> level for accepting responsibility is to save
> government resources. The government benefits when
> defendants have incentive to accept guilt without
> trial.  To this end, the application notes to § 3E1.1
> provide that the acceptance of responsibility
> adjustment "is not intended to apply to a defendant who
> puts the government to its burden of proof at trial by
> denying the essential factual elements of guilt, is
> convicted, and only then admits guilt and expresses
> remorse."  U.S.S.G. § 3E1.1, application note 2.  Our
> prior decisions have also recognized this rationale,

[citations omitted].

> The acceptance of responsibility provision of the Sentencing Guidelines, in light of its purposes, should permit Kellum to receive an acceptance of responsibility adjustment because he pleaded guilty to the charges in the Buss indictment, saving the government and judiciary the time and expense of proceeding to trial on that indictment. These benefits to the government are not wholly negated by Kellum's prior venture in trial on the Fidelity indictment, nor are the benefits insubstantial. We hold that it is not clear error for a district court to grant a defendant charged in two separate indictments later grouped for sentencing a downward adjustment for acceptance of responsibility if the defendant pleads guilty to all charges in one indictment, save for those dismissed agreeably by the government, even if the defendant goes to trial on the charges in the other indictment.

372 F 3d. 1145.

Even though the Court is sentencing Jay on two counts in a single indictment, the Court concludes Jay's circumstances are more analogous to those in *Kellum* than to those in *Ginn*. Here the government did not even include Count 6 in its original charging instrument. Moreover, as noted, there is not any evidence to link Jay's criminal conduct in Court 3 to his conduct in Count 6. Thus, consistent with the district court's holding in *Kellum,* the Court concludes Jay is entitled to a two-level reduction for acceptance of responsibility to account for his guilty plea to one, but not to all, of the counts of conviction.[4]

---

[4] The Court concludes Jay is not eligible for an additional one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b) because Jay did not accept responsibility as to Count 3 and, thus, did not permit the government to conserve its resources with respect to Counts 2, 3, and 4.

This results in a total offense level of 26.  At Criminal History Category III, the advisory sentencing guidelines range is 78-97 months.

## CONCLUSION

For these reasons, the Court concludes:

1.   Jay's advisory sentencing guideline range before consideration of any departure or statutory factors is **78-97** months.

2.   It is "fair and just" to allow Jay to withdraw his assent to the Plea Agreement and his guilty plea to Count 6 based on the Supreme Court's intervening *Booker* decision.  If Jay chooses to move to withdraw his guilty plea, the Court will exercise its discretion to allow him to do so, which, in turn, will leave Counts 2, 4, and 6 pending for trial or other resolution.  The Court, therefore, gives Defendant Jay leave to file a motion to withdraw his assent to the Plea Agreement and his guilty plea to Count 6 no later than May 2, 2005.  If Jay files such a motion, the Court will grant it and conduct a hearing at 1:30 p.m., May 13, 2005, for the purposes of setting trial dates for Counts 2, 4, and 6.  If Jay does not file such a motion, the Court will complete these sentencing proceedings at 1:30 p.m., May 13, 2005.

IT IS SO ORDERED.

DATED this 21st day of April, 2005.


_____
ANNA J. BROWN
United States District Judge